

IN THE
TENTH COURT OF APPEALS

No. 10-11-00002-CV

LISA AND ROGER FRENCH,

Appellants

 v.

MARCO FRENCH, G.T. MORTON,
AND JUDY MCCOLLUM,

Appellees

From the 40th District Court
Ellis County, Texas
Trial Court No. 79,926

# O P I N I O N

Lisa French was arrested for felony theft but was later "no-billed" by a grand

jury. She and her husband Roger then sued Judy McCollum, G.T. Morton, and Marco

French for malicious prosecution and defamation.[1] The trial court granted the

defendants' (Appellees') traditional and no-evidence joint motion for summary

---

[1] After submission, the Frenches filed a motion to dismiss their appeal as to Appellee Marco French only. Dismissal of this appeal as to Marco French only would not prevent him from seeking relief to which he would otherwise be entitled. We grant the motion and dismiss the appeal as to Marco French. *See* TEX. R. APP. P. 42.1(a)(1).

judgment. The Frenches appeal, asserting in their sole issue that the trial court erred in granting summary judgment. We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

## Background

The Frenches lived near Judy and her husband Wayne McCollum in Waxahachie. The McCollums had known Roger and his parents for many years. Lisa helped out the McCollums and had a key to their home.

In January 2009, the McCollums reported to Lt. Jason Westmoreland of the Ellis County Sheriff's Office that approximately $83,000 in cash, which had been kept in a safe, had been stolen from their home. G.T. Morton, a close friend of the McCollums, was present when Lt. Westmoreland interviewed the McCollums, and they and Morton related that they suspected that Lisa had stolen the cash. After further investigation, including an examination of the Frenches' bank records, Lt. Westmoreland sought and obtained an arrest warrant for Lisa for third-degree felony theft (over $20,000 and under $100,000). Lisa was arrested and jailed in Arkansas (the Frenches had subsequently moved there) before being released on bail. An Ellis County Grand Jury "no-billed" Lisa in November 2009.

## Roger's Claims

Digressing briefly, we hold that the trial court properly granted the no-evidence motion for summary judgment on Roger's claim for malicious prosecution. There is no evidence that Roger was prosecuted at all; only Lisa was charged and arrested. The trial court also properly granted the no-evidence motion for summary judgment on

Roger's claim for defamation. There is no evidence that any defamatory statements were made about Roger.

## Malicious Prosecution

The elements of malicious prosecution are:

(1) commencement of a criminal prosecution against the plaintiff;
(2) the defendant's initiation or procurement of that prosecution;
(3) termination of the prosecution in the plaintiff's favor;
(4) the plaintiff's innocence;
(5) lack of probable cause to initiate or procure the prosecution;
(6) malice in filing the charge; and
(7) damage to the plaintiff.

*Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006).

### *Probable Cause*

In their traditional motion for summary judgment, the Appellees moved for summary judgment on the probable-cause element. In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756.

> Under the probable cause element, we consider "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *Kroger*, 216 S.W.3d at 792-93. A presumption exists that the "defendant acted reasonably and had probable cause to initiate criminal proceedings." *Kroger*, 216 S.W.3d at

793. "To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause." *Id*. Such evidence includes, for example, prior bad relations, preexisting debt, or any private motivation to harm the plaintiff. *Id.* at 795.

We consider "only whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began." *Richey*, 952 S.W.2d at 519. The question is not what the actual facts were, but what the defendant honestly and reasonably believed the facts to be. *Kroger*, 216 S.W.3d at 792-93. When the facts are disputed, the jury "must weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact." *Richey*, 952 S.W.2d at 518.

*Braneff v. Troutmen*, No. 10-08-00203-CV, 2010 WL 4644495, at *3 (Tex. App.—Waco Nov. 17, 2010, pet. denied) (mem. op.); *see also Richey*, 952 S.W.2d at 517 ("there is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings").

As summary-judgment evidence on probable cause, the Appellees relied on the report and arrest-warrant affidavit of Lt. Westmoreland, the investigating officer. They contend that, because he found probable cause to request an arrest warrant for Lisa and a judge issued the arrest warrant, probable cause on the Appellees' part was conclusively established.

The subsequent probable-cause determinations of the investigating officer and the judge who issued the arrest warrant are irrelevant to whether Judy and Morton reasonably believed that Lisa had stolen money from the McCollums at the time they reported the theft. *See id.*; *see also Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex. 1983); *Digby v. Tex. Bank,* 943 S.W.2d 914, 920-21 (Tex. App.—El Paso 1997, writ denied); *Turner v.*

*Roadway Express, Inc.*, 911 S.W.2d 224, 226-27 (Tex. App.—Fort Worth 1995, writ denied).

Accordingly, the trial court erred in granting the traditional motion for summary judgment on the probable-cause element of Lisa's claim of malicious prosecution.

We turn to the Appellees' no-evidence motion for summary judgment and examine Lisa's summary-judgment evidence to determine if she rebutted the probable-cause presumption and raised a fact issue on probable cause. A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex. 2006); *see also Humphrey v. Pelican Isle Owners Ass'n,* 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez,* 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i); *see id.* Comment 1997 ("To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements."). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)). On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of fact. *Id.* When

determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ridgway,* 135 S.W.3d at 601.

Lisa relies on her affidavit to raise a genuine issue of fact and to rebut the probable-cause presumption (and also to rebut Lt. Westmoreland's affidavit). Lt. Westmoreland's probable-cause affidavit states that the McCollums told him that Lisa, who lived on the same street, had befriended them in 2008, that she drove for them and did odd jobs and errands for them, and that they often paid Lisa "hundreds of dollars for minor tasks." Judy told Lt. Westmoreland that Lisa pressured her to put Wayne in a retirement home and that she "felt as though Lisa wanted to get Wayne away from home for a specific purpose." Judy also said that when Lisa would drive them somewhere, once the McCollums were in the car, Lisa "would always have an excuse to go back into the residence for something." Judy also said that Lisa was the only person with unsupervised access to the McCollum's home.

Lisa's affidavit states that, while she did live down the street and did jobs for the McCollums, that was "not the entire story." The McCollums knew Lisa well, and she did far more than odd jobs for them. She was their attorney-in-fact, with Judy and Wayne giving her powers of attorney in 2002. Lisa also had a medical power of attorney for Wayne dated in 2002. Copies of these powers of attorney were attached to Lisa's affidavit. Lisa also states that she and Roger were beneficiaries of two-thirds of the McCollum estate under the McCollums' wills.

Lisa states while she did have a key to the McCollums' home, she did not have unsupervised access. The McCollums "were forgetful" and "very often left their home

unlocked when they were away." As for the allegedly missing money, Lisa states that she is innocent, that she did not take the money, and that she believes that Judy and Morton took the money:

> If any money is, or was, missing the most likely reason is a result of Mr. McCollum's habit of placing large sums of cash on his table or on his bed, spread out, so he could count it. Mrs. McCollum knew about this habit and often reported that $10,000 or $15,000, thought stolen or misplaced, had been later found by either Mrs. McCollum or Mr. McCollum. This habit, she thought, was common and often occurred.
>
> Mrs. McCollum's motives and grounds for reporting that I was a thief arose from her being mad at me for getting ready to move my residence. In addition, she often took cash from [Mr.] McCollum's stacks of money he left out on the table or on his bed, and did not want to admit to Mr. McCollum she had taken the money. So she blamed me.
>
> Mr. Morton's grounds and motives arose when he saw an opportunity to get me removed as attorney-in-fact and get himself closely involved with the McCollums' business and economic affairs, all after he learned of their oil and gas up-front lease payment from minerals the McCollums owned in Hill County.
>
> Mr. Morton and Mrs. McCollum had no good faith reason to believe I stole from the McCollums. Their belief was that with me totally discredited, and indicted, they could get away with the deceit they had planned to inflict upon Mr. McCollum. … Another motive for Mrs. McCollum and Mr. Morton and Marco French telling lies and half-truths to the Sheriff's investigator was to discredit me so that they could replace me and my husband as beneficiaries under the McCollums' new wills.

The Appellees assert that Lisa's affidavit does not rebut the presumption and create a fact issue on probable cause because it is conclusory. The Appellees did not file objections to Lisa's affidavit in the trial court, but a complaint that summary-judgment evidence is conclusory can be made for the first time on appeal. *See Wolfe v. Devon Energy Prod. Co., LP*, ___ S.W.3d ___, ___, 2012 WL 851678, at *14-15 (Tex. App.—Waco

Mar. 14, 2012, pet. filed); *Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.). The Appellees, however, do not specify what parts of Lisa's affidavit are conclusory as to probable cause and thus present nothing for review. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring "sufficient specificity" as a "prerequisite to presenting a complaint for appellate review").

Viewing Lisa's affidavit in the light most favorable to her, as we must in reviewing a summary judgment, *see Braneff,* 2010 WL 4644495, at *5, we conclude that it rebuts the probable-cause presumption by creating a fact issue as to "other information" that Judy acted on and Judy's state of mind in reporting her suspicion of Lisa to law enforcement. *See id.* at *4-5. The other information that Lisa articulated was: Wayne's habit of taking out and counting his money and leaving it out; Judy often taking some of it without telling Wayne when he left it out; and their habit of "very often" leaving their home unlocked while away. She also noted Judy's motive for blaming Lisa for the missing money. Lisa further points out that the McCollums waited almost three months to report the alleged theft, had a history of thinking that cash had been stolen and later finding it, and had no direct proof that Lisa took the cash.

Because the facts underlying Judy's reasonableness and good faith in reporting Lisa to law enforcement are disputed, *see Richey*, 952 S.W.2d at 518 ("When the facts underlying the defendant's decision to prosecute are disputed, the trier of fact must weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact."), the trial court erred in granting a no-evidence summary judgment on the probable-cause element as to Judy on Lisa's claim for malicious

prosecution.

But as to Morton, Lisa's affidavit is devoid of facts; it consists only of conclusory statements that are no more than "mere surmise or suspicion" about Morton's involvement. *See King Ranch,* 118 S.W.3d at 751. Accordingly, the trial court properly granted the no-evidence motion for summary judgment as to Morton on Lisa's claim for malicious prosecution.[2]

### *Malice*

> A plaintiff must establish that the defendant acted with malice, which is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others. *Digby,* 943 S.W.2d at 922. It is proved by direct or (usually) circumstantial evidence. *Id.* The absence of probable cause can provide circumstantial evidence of a hostile or malicious motive. *Id.* at 923.

*Braneff,* 2010 WL 4644495, at *5.

Failing to fully and fairly disclose all material information and knowingly providing false information to law enforcement are relevant to malice. *Richey,* 952 S.W.2d at 519; *see also Thrift v. Hubbard,* 974 S.W.2d 70, 80 (Tex. App.—San Antonio 1998, pet. denied) (failing to disclose exculpatory facts was evidence of malice). Thus, in addition to the evidence disputing probable cause, which can serve as circumstantial evidence of malice, Lisa points out the following as evidence of malice because it shows a failure by Judy to report to law enforcement: that Wayne habitually took his cash out to count it, left it out in stacks, and Judy would often take some of it without telling Wayne; that they often reported to Lisa that cash was stolen or misplaced, only to find it

---

[2] Having found that the trial court properly entered a no-evidence summary judgment on malicious prosecution for Morton on the probable-cause element, we need not address the remaining elements as to him.

later; that, while away, they often left their home unlocked, which allowed anyone to enter; and that Judy was "mad" at Lisa because the Frenches were moving away. Moreover, Lisa's affidavit highlights that the McCollums had granted Lisa powers of attorney in 2002, yet the McCollums told investigators that Lisa had befriended them in 2008. Viewing Lisa's affidavit in the light most favorable to her, a genuine issue of material fact exists on malice. Accordingly, a no-evidence summary judgment for Judy on the malice element was error.

### Causation: Initiated or Procured the Prosecution

We first address the Appellees' contention that no criminal prosecution was commenced against Lisa because the grand jury "no billed" Lisa and that a cause of action for malicious prosecution does not exist without a prosecution. The Appellees cite no case so holding, instead relying on the criminal-law concept that a felony prosecution is commenced when a grand jury returns an indictment.

Lisa points out the absence of malicious-prosecution case law supporting the Appellees' contention, and we note that, in a plurality opinion, this court has tacitly found that a person who has been "no billed" by a grand jury has had a criminal prosecution commenced against him for purposes of a malicious-prosecution claim. *Tranum v. Broadway*, 283 S.W.3d 403, 411, 416-17 (Tex. App.—Waco 2008, pet. denied) (plurality op.) (affirming recovery on malicious-prosecution claim where plaintiff had been "no billed" by grand jury); *see also Rust v. Page*, 52 S.W.2d 937, 942 (Tex. Civ. App.—Fort Worth 1932, writ dism'd) (commencement was established when plaintiff waived service of arrest warrant by turning herself in); RESTATEMENT (SECOND) OF TORTS

§ 654(2)(c) (1977) ("Criminal proceedings are instituted when … he is lawfully arrested on a criminal charge."); *id.* cmt. e ("Even without the issuance of any process, or indictment or information, criminal proceedings may be instituted by lawful and valid arrest of the accused on a criminal charge."). Furthermore, recent malicious-prosecution cases have proceeded on an arrest alone. *See Marin Real Estate Partners, L.P. v. Vogt,* ___ S.W.3d ___, ___, 2011 WL 5869520, at *24, 29 (Tex. App.—San Antonio Nov. 23, 2011, no pet. h.) (affirming recovery on malicious-prosecution claim where plaintiff had been "no billed" by grand jury); *Dangerfield v. Ormsby,* 264 S.W.3d 904, 908 (Tex. App.—Fort Worth 2008, no pet.) (affirming summary judgment on malicious-prosecution claim on grounds other than prosecution not having been commenced against plaintiff, who had only been arrested). We thus hold that, for purposes of a civil cause of action for malicious prosecution, a formal charge by indictment or information against the plaintiff is not a requirement for a malicious-prosecution cause of action.

For a plaintiff to show that a defendant caused a malicious prosecution, she must establish that the defendant either *initiated* or *procured* the prosecution. *See Richey,* 952 S.W.2d at 217. "A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities." *Browning-Ferris Indus. v. Lieck,* 881 S.W.2d 288, 292 (Tex. 1994). Lisa contends that the McCollums made a formal charge, but the summary-judgment evidence shows that they only met with Lt. Westmoreland and accused Lisa of theft. We find no case law on the meaning of "makes a formal charge" in the context of malicious prosecution, and we note that the only "formal" complaint in the record is Lt. Westmoreland's arrest-warrant affidavit. Based on our discussion and disposition

that follow, we need not determine whether the mere making of a verbal report to law enforcement constitutes making "formal charges" for purposes of "initiating" a prosecution.

A defendant procures a prosecution when its

> actions were enough to cause the prosecution, and but for [its] actions the prosecution would not have occurred. [The defendant] does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.

*Lieck,* 881 S.W.2d at 293; *see Dangerfield,* 264 S.W.3d at 910 (explaining that to establish procurement, the defendant's desire must be the "determining factor in the official's decision to commence the prosecution").

> Thus, "proof that a complainant has knowingly furnished false information is necessary for liability when the decision to prosecute is within another's discretion. But such proof is not sufficient." *King v. Graham,* 126 S.W.3d 75, 76 (Tex. 2003). Instead, "there must be proof that the prosecutor acted based on the false information and that but for such false information the decision [to prosecute] would not have been made." *Id.* Therefore,

> a person who knowingly provides false information to the grand jury or a law enforcement official who has the discretion to decide whether to prosecute a criminal violation cannot be said to have caused the prosecution if the information was immaterial to the decision to prosecute. If the decision to prosecute would have been made with or without the false information, the complainant did not cause the prosecution by supplying false information.

*Id.* at 78; *see First Valley Bank of Los Fresnos v. Martin,* 144 S.W.3d 466, 470 (Tex. 2004). The plaintiff is not required to present direct evidence such as testimony from a prosecutor to establish causation in a malicious prosecution claim. *See In re Bexar County Criminal Dist. Attorney's Office,* 224 S.W.3d 182, 186 (Tex. 2007) (orig. proceeding).

*All Am. Tel., Inc. v. USLD Commun's., Inc.,* 291 S.W.3d 518, 533-34 (Tex. App.—Fort

Worth 2009, pet. denied).

Lisa again points to the following summary-judgment evidence concerning the incorrect or false information that the McCollums gave to Lt. Westmoreland:

- That Lisa had befriended the McCollums in 2008, but they knew her well and had even given her their powers of attorney in 2002;

- That Lisa had a key to their home and was the only person with unsupervised access, but the McCollums often left their home unlocked while away;

- That the McCollums kept their money in a safe, but Wayne habitually took it out to count on the bed or table and would leave it out; and

- That they suspected that Lisa took the missing money, but Judy often took money from Wayne's stacks of money when he left it out.

Again viewing Lisa's affidavit in the light most favorable to her, we find that a genuine issue of material fact exists on whether Judy procured the prosecution of Lisa. Accordingly, a no-evidence summary judgment for Judy on that element was error.

### Favorable Termination and Innocence

The Appellees assert that, although Lisa was "no billed" by the grand jury, the prosecution was not terminated in her favor because she was not acquitted of the charge and that being "no billed" is not evidence of innocence.[3]

We held above that, for purposes of a claim for malicious prosecution, a formal

---

[3] The Appellees cite several cases for the purported requirement of an acquittal in every malicious-prosecution case. Two of those cases involved plaintiffs who had been tried and convicted, and the mentioned acquittal requirement was thus not improper. *See Short v. Glover,* No. 6:03-CV-324, 2003 WL 22479620, at \*3 (E.D. Tex. Nov. 3, 2003); *Parker v. Dallas Hunting & Fishing Club,* 463 S.W.2d 496, 498-99 (Tex. Civ. App.—Dallas 1971, no writ). But neither case spoke in terms of an acquittal being a required element in every malicious-prosecution claim. The other cited case mentions acquittal only in dicta. *See Harrison v. Southland Corp.,* 544 S.W.2d 692, 694 (Tex. Civ. App.—Dallas 1976, no writ). Moreover, an acquittal is not equivalent to or a determination of actual innocence.

charge by indictment or information against the plaintiff is not a requirement. It follows that an acquittal is also not required for the prosecution to have terminated in the plaintiff's favor. Moreover, the supreme court has held that an acquittal (a "not guilty" verdict) is not a necessary element. *Davis v. City of San Antonio*, 752 S.W.2d 518, 523 (Tex. 1988) ("The City has not cited, nor have we found, any case absolutely requiring a termination on the merits, e.g., a verdict of 'not guilty,' as a necessary element of a cause of action for malicious prosecution. Instead, the essential question seems to be whether 'the proceedings have terminated in favor of the accused.'" (quoting RESTATEMENT (SECOND) OF TORTS § 653(b) (1977)); *see also* RESTATEMENT (SECOND) OF TORTS § 659(b) (1977) ("Criminal proceedings are terminated in favor of the accused by … the refusal of a grand jury to indict").

In her affidavit, Lisa asserts that she is innocent and that she did not steal money from the McCollums; she does not rely on being "no billed" as proof of her innocence. She also filed the affidavit of Terry Alderson, a certified public accountant and certified fraud examiner, and he explained the cash transactions in the Frenches' bank accounts that the investigator had considered to have been unusual. Viewing Lisa's summary-judgment evidence in the light most favorable to her, we find that a genuine issue of material fact exists on Lisa's innocence. Accordingly, a no-evidence summary judgment for Judy on these elements was error.

### Summary

In conclusion, the trial court erroneously granted the traditional motion for summary judgment on the probable-cause element of Lisa's malicious-prosecution

claim.  The trial court properly granted the no-evidence motion for summary judgment on Lisa's claim as to Morton, but as to Judy, genuine issues of material fact exist on each element and entering summary judgment was error.

## Defamation

The Appellees moved for a no-evidence summary judgment on Lisa's defamation claim.  The elements of a defamation claim of a private plaintiff against a non-media defendant are:

1. the defendant published a factual statement about the plaintiff;
2. the statement was defamatory;
3. the statement was false;
4. the defendant acted with negligence concerning the truth of the statement; and
5. the plaintiff suffered injury.

*WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998).

### *False and Defamatory Statement and Injury*

A statement that falsely charges a person with the commission of a crime is defamatory per se.  *Leyendecker & Assocs. v. Wechter,* 683 S.W.2d 369, 374 (Tex. 1984); *Moore v. Waldrop,* 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.).  If a statement is defamatory per se, proof of injury is not required because the law presumes actual injury to the plaintiff's reputation and entitles the plaintiff to recover general damages for loss of reputation and mental anguish.  *Bentley v. Bunton,* 94 S.W.3d 561, 604 (Tex. 2002); *Moore,* 166 S.W.3d at 384; *see also Tranum,* 283 S.W.3d at 422.

Viewing the summary-judgment evidence in the light most favorable to Lisa, we find that a genuine issue of material fact exists on whether Judy and Morton made

statements to Lt. Westmoreland accusing Lisa of theft and whether those statements were false. Lt. Westmoreland's report and affidavit indicate that the McCollums and Morton told him that they suspected that Lisa had stolen the allegedly missing cash. Lisa's affidavit testimony that she is innocent and did not steal money from the McCollums raises a genuine issue of material fact on the falsity of the statements to Lt. Westmoreland.

### Fault

A private plaintiff must prove that a non-media defendant acted with negligence concerning the truth of the statement. *McLemore,* 978 S.W.2d at 571; *Gonzales v. Methodist Charlton Med. Ctr.,* No. 10-11-00257-CV, 2011 WL 6091255, at *11 (Tex. App.—Waco Dec. 7, 2011, no pet.) (mem. op.); *Roe v. Walls Regional Hosp., Inc.,* 21 S.W.3d 647, 651 (Tex. App.—Waco 2000, no pet.); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 426 (Tex. App.—Waco 1997, pet. denied). *But see Snead v. Redland Aggregates Ltd.,* 998 F.2d 1325, 1334 (5th Cir. 1993) (applying strict liability); *Thomas-Smith v. Mackin,* 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same); *Peshak v. Greer,* 13 S.W.3d 421, 425-26 (Tex. App.—Corpus Christi 2000, no pet.) (same). The plaintiff must show that the defendant knew or should have known that the defamatory statement was false. *Norris,* 949 S.W.2d at 426 (citing *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex. 1976)).

In their no-evidence motion for summary judgment, the Appellees asserted that the fault element for defamation is "malice or negligence." In defamation law, "actual malice means knowledge of, or reckless disregard for, the falsity of a statement."

*Bentley*, 94 S.W.3d at 591. Given our consistent precedent on the negligence element of a defamation claim, we will only address negligence. And based on that analysis, we need not address Lisa's suggestion that we adopt a strict-liability standard in this case.

The Appellees separately assert that a malice standard should apply because a common-law qualified privilege exists for reports to law enforcement. *See, e.g., Vista Chevrolet, Inc. v. Barron*, 698 S.W.2d 435, 436 (Tex. App.—Corpus Christi 1985, no writ); *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ). To defeat the qualified privilege, the plaintiff must prove that the statement was made with actual malice. *See Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Qualified privilege is an affirmative defense to a defamation claim. *See id.*

"To invoke the privilege on summary judgment, [a defendant] must conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The Appellees did not plead qualified privilege as a defense, nor did they move for a traditional summary judgment on it.[4] "It is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Therefore, the malice standard that arises with the qualified privilege is not before us.

To raise a fact issue on Judy's negligence—that Judy knew or should have

---

[4] The Appellees could not have moved for a no-evidence summary judgment on qualified privilege because it is a defense on which they have the burden of proof. *See* TEX. R. CIV. P. 166a(i).

known that Lisa did not steal the McCollums' money when she told Lt. Westmoreland that she suspected Lisa of stealing it—Lisa first points out that the summary-judgment evidence reflects that the only investigation by the McCollums into the allegedly missing money was confronting Lisa about it, and she denied any involvement to them. Further, Lisa again relies on the evidence that Judy knew (and failed to disclose to Lt. Westmoreland) when she accused Lisa of stealing the money: that Wayne habitually took his cash out to count it, left it out in stacks, and Judy would often take some of it without telling Wayne; that they often reported to Lisa that cash was stolen or misplaced, only to find it later; and that, while away, they often left their home unlocked, which allowed anyone to enter. Viewing this evidence in the light most favorable to Lisa, we find that a genuine issue of material fact exists on whether Judy acted with negligence concerning the truth of her statement.

But as to whether Morton acted with negligence, we again note that Lisa's affidavit is devoid of facts; it consists only of a "mere surmise or suspicion" of facts about Morton's intent and motivation. There is no evidence of what Morton knew about the McCollums' habits with their money and their house. Accordingly, the trial court properly granted the no-evidence motion for summary judgment as to Morton on Lisa's defamation claim.

## Conclusion

To conclude, as to only Appellee Marco French, this appeal is dismissed. We sustain in part and overrule in part the Frenches' sole issue. The trial court properly entered a take-nothing judgment on Roger's claims for malicious prosecution and

defamation against Judy and Morton and on Lisa's claims for malicious prosecution and defamation against Morton, and we affirm the trial court's judgment in those respects.

The trial court erroneously entered a take-nothing judgment on Lisa's claims for malicious prosecution and defamation against Judy. We reverse the trial court's judgment in those respects and remand Lisa's claims for malicious prosecution and defamation against Judy.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed in part, reversed and remanded in part, dismissed in part
Motion to dismiss granted
Opinion delivered and filed July 19, 2012
[CV06]